Venzke and others, Appellants, vs. Magdanz and another, Respondents.*

*April 15—May 18, 1943.*

* Motion for rehearing denied, with $25 costs, on July 27, 1943.

*Edwin B. Stillman* of Waukesha, for the appellants.

For the respondents there was a brief by *Jacobson, Malone & Hippenmeyer* of Waukesha, and oral argument by *Marcus A. Jacobson*.

WICKHEM, J. Defendants, who are unmarried women, located an old house which they wished to purchase and remodel as a residence. The house had not been occupied for about six years, and defendants had a conference with plaintiffs sometime in February, 1937, to ascertain the cost of putting the house in livable condition. About an hour was spent at the house, measurements were taken, the house inspected, and the changes discussed. About two weeks thereafter plaintiffs sent defendants what was designated an

"estimate." This contained a number of items and the estimated cost of each.[1]

Defendants inquired whether certain minor changes would be included in the total of $2,425.50. Plaintiffs stated that these would be taken care of within the estimate. Defendants informed plaintiffs at this time that they had only $2,500 to spend and did not wish to purchase the property unless they were certain that the cost of remodeling would not exceed

[1] February 2, 1937.

Miss G. E. Schlief,
      622 N. Water Street, Milwaukee, Wisconsin.

A. Venzke & Sons

Carpenter Contractor and Cement Work
Rural Electrification and Supplies

Phone 9618-F12                                    Route 2, Waukesha, Wis.

Estimate on Remodeling House

| | |
|---|---|
| Roofing house with best red cedar shingles | $216.00 |
| Tin deck and valleys and chimneys | 52.00 |
| Plastering ceilings upstairs and kitchen | 124.00 |
| All other patching and cellarway | 65.00 |
| Repairing upstairs and hardware needed | 35.00 |
| Windows and glassware needed | 25.00 |
| New screen on inside (copper) outside (alum) | 32.00 |
| One new french door 2 outside glass doors | 38.00 |
| New ceiling in living room | 72.00 |
| Sink with trap and 2-way faucet pipe | 88.00 |
| Bathtub complete | 75.00 |
| Heil Furnace oil-burner tank | 575.00 |
| Deep well pump complete pipe and all and water softener | 325.00 |
| Excavating furnace room | 29.00 |
| Cementing furnace room | 112.00 |
| Sanding and varnishing upstairs floors | 54.00 |
| Kitchen cupboard, baseboard, patching tile floor and electric repairs | 60.00 |
| | $1,977.50 |
| Storm windows | 65.00 |
| Garage and tearing down old wing | 383.00 |
| | $2,425.50 |

P. S. I haven't had time to figure on the road but a person can fix as they like later, perhaps $100 would fix it pretty well.

$2,500. They were assured by plaintiffs that the cost would not exceed the estimate. In June, 1937, the work began. Various difficulties and emergencies arose which resulted in extra labor and a dispute as to whether these were legitimate extras and within the estimate or contract. On September 1, 1937, defendants moved into the house, most of the interior having been completed. The work on the outside of the house continued until October. During this time, there were various objections and disputes concerning the manner in which the work was conducted. On or about December 1, 1937, defendants were presented with a bill for a balance of $1,862.64. Defendants had already paid $1,270.51. The outlines of the controversy began to appear at this point, Venzke claiming to have merely estimated the cost of the job and to have expended $3,153.15 in labor and materials. It was plaintiffs' position that the $2,425 was only an estimate; that he had come very nearly completing the contemplated work at this price, and that the balance was for extras, amounting to $956.99. These extras, during the course of the trial were increased to the sum of $1,354.44. Defendants agreed that some of the changes were legitimate extras, and claimed that the rest were covered by what they considered to be an agreed price upon a contract of remodeling.

The case was thus tried in the court below on two different theories. Plaintiffs contended that the work was to be done and paid for on a time and material basis. Defendants contended that the estimate was a binding contract which, except for some conceded extras, must be the basis of plaintiffs' recovery. The counterclaim demanded damages for faulty workmanship.

The court found that the alleged estimate was a contract; allowed the sum of $536.58 for extras; disallowed as extras charges amounting to $517.16, and fixed defendants' damages for defective workmanship at $816, this being the sum which, in the view of the court, it would be necessary to expend in

order to remove the defective work and replace it with proper construction.

We are presented with three questions upon this appeal:

(1) Was the alleged estimate a contract or a mere estimate?
(2) If the former, were the various disputed items included within its terms or were they extras?
(3) Was the proper rule of damages for defective workmanship applied in this case?

The case offers some difficulty. If the written estimate is to be judged by what it contains within four corners, it is certainly not a contract. There was, however, an oral contract following the estimate in which plaintiffs agreed to furnish the items listed in the estimate at no more than the estimated price. This was not a contract to do all of the remodeling, but merely to furnish specifically listed items at the price previously estimated. Plaintiffs were under no obligation whatever to furnish any items not included in the estimate without receiving pay for them as extras. This contract is not free from ambiguity but is sufficiently definite.

It now becomes proper to check disputed items with the estimate to see whether they are included therein, or should be allowed as extras. The trial court allowed as an extra a claim for boards and labor made necessary by the bad condition of supporting material under the shingles. This was proper because this item is not included in the item of roofing the house "with best red cedar shingles." The court disallowed a large number of extras connected with furnishing a water supply to the house. The item in the estimate is "Deep well pump complete pipe and all and water softener $325." The well turned out to be dry and defendants paid for deepening the well. The deeper well required a different type of pump than was contemplated by plaintiffs. It turned out that plaintiffs had assumed that the piping from the well went

to the house, whereas it did not, and hence plaintiffs had to furnish extra piping and labor. The cost of all these extra expenses in getting water to the house was $365.56. The trial court excluded these items as extras upon the ground that plaintiffs had agreed in the estimates to furnish a complete pump and piping system to the house and was bound by this price. With this conclusion we agree. A charge for basement posts, $10, was disallowed because the necessity for these posts must have been apparent to plaintiffs at the time the estimate was made. We consider this error because there was no item in the estimate for basement posts. There was a charge for back step, mortar, cement, and time, $65.60. This was disallowed because the trial court considered that it was really part of a stoop which was contemplated by the parties as part of the original work. We do not find this item in the estimates. It should have been allowed as an extra.

From this it appears that the trial court erroneously excluded as extras items totaling $75.60 and that the proper amount of plaintiffs' charges is $3,123.68. Defendants made payments on this account of $1,270.51, $575, and $86, a total of $1,931.51, leaving an unpaid balance of $1,192.17.

We now come to the finding of $816, damages to defendants for defective workmanship. No attack is made upon the findings of the trial court that there was defective workmanship. The only complaint is that a wrong rule of damages was applied. Plaintiffs are clearly right in this respect. See Herro v. Heating & Plumbing F. Corp. 206 Wis. 256, 239 N. W. 413. The only answer that defendants have is that this point was not brought to the attention of the court. It appears that plaintiffs did object to questions framed upon the cost of replacement theory, and the court's attention was sufficiently called to the fact that worth in its present condition as compared to worth if properly built is the proper rule of damages. In any event, this is a rule of law that is not waived as objections to evidence are waived. The judgment must be reversed and there must be a new trial upon defendants'

counterclaim for damages arising out of defective workmanship. We see no reason why this case should be retried in any of its other phases. Plaintiffs have established that there is due upon the complaint the sum of $1,192.17, and this amount is subject to reduction by whatever damages to defendants are found upon retrial of the issues raised by the counterclaim.

*By the Court.*—Judgment reversed, and cause remanded with directions for a new trial solely upon the issues raised by defendants' counterclaim. Upon determination of these issues, judgment is directed to be entered for the amount of the balance in favor of the parties to whom such balance is due.

* Motion for rehearing denied, with $25 costs, on July 27, 1943.